UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GARY DEE BICE | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No: 1:10CV21CEJ |
| | ) |
| JOHN JORDAN, SHERIFF & | ) |
| CAPTAIN MULCAHY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW AND STATEMENT OF UNDISPUTED MATERIAL FACTS**

**IN SUPPORT OF DEFENDANTS JOHN JORDAN and CAPTAIN MULCAHY'S**

**MOTION FOR SUMMARY JUDGMENT**

**I.      HISTORY OF CASE AND MATERIAL ISSUES**

Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated Plaintiff's constitutional rights by failing to provide him medical care and treatment in a timely manner.

The Defendants have denied the allegations that they were deliberately indifferent to Plaintiff's medical care and specifically the undisputed facts show that the Plaintiff was provided adequate medical care by the Defendants, that the Plaintiff was not treated with deliberate indifference and that Sheriff John Jordan and Captain James Mulcahy are entitled to qualified immunity as a matter of law.  It is also an undisputed fact that the Defendants contracted with an

-1-

outside company namely Advanced Correctional Healthcare and Advanced Correctional Healthcare is in complete control of the medical care and treatment of inmates in the Cape Girardeau County Jail and that the jail only provides transportation services to outside hospitals and physicians.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if based on all the information before the court there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962).  An issue of material fact is genuine if it has a real basis in the records; and, a genuine issue of fact is material if "it might affect the outcome of the suit under the governing law" Hartnagel v. Norman, 953 F.2d  394, 395 (8th Cir. 1992).

The burden is on the moving party to clearly establish the nonexistence of any genuine issue of fact that is material to a judgment in its favor.  City of Mt. Pleasant, Iowa v. Associated Electric Co-Op, Inc., 838 F. 2d 268, 273 (8th  Cir. 1988).   Once the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts.  Matsushita Electric Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; but rather must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.  Webb v. Lawrence County, 144 F. 3d 1131, 1135 (8th Cir. 1998).

A pretrial detainees' constitutional claim regarding denial of proper medical care is analyzed under the Fourteenth Amendment, using the Eighth Amendment's deliberate indifference standard.

Vaughn v. Green County, Arkansas, 438 F. 3d 845, 850 (8th Cir. 2006); see also Hartsfield v. Colburn, 491 F. 3d 394, 396 (8th Cir. 2007). Deliberate indifference may result from a delay in providing medical treatment. Boyd v. Knox, 47 F. 3d 966, 969 (8th Cir. 1995). The showing required for deliberate indifference to a serious medical need is more than gross negligence and more than a disagreement with treatment decisions. Jones v. Minnesota Department of Corrections, 512 F. 3d 478, 482 (8th Cir. 2008).

To establish a constitutional claim for deliberate indifference to serious medical needs, the Plaintiff must demonstrate that he "suffered objectively serious medical needs and that the jail officials actually knew of, but deliberately disregarded those needs". Dulany v. Carnahan, 132 F. 3d 1234,1 239 (8th Cir. 1997).

When a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured "by reference to the effect of delay in treatment" Beyerbach v. Sears, 49 F. 3d 1324, 1326 (8th Cir. 1995). Therefore, to succeed on a delay in medical treatment claim, the Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment" Laughlin v. Schriro, 430 F. 3d 927, 929 (8th Cir. 2005).

For the purposes of summary judgment, Plaintiff's failure to offer evidence that a delay in treatment had a detrimental effect "fails to raise a genuine issue of fact on an essential element of the claim" Beyerbach v. Sears, 49 F. 3d at 1327.

In order to avoid the entry of summary judgment in defendants' favor when a claim of deliberate indifference to serious medical needs is based on delay in medical treatment, the plaintiff must submit verifying medical evidence of the detrimental effect the delay in treatment had on the

-3-

plaintiff's condition or prognosis Laughlin v. Shriro, 430 F. 3d at 929; Crowley v. Hedgepeth, 109 F. 3d 500, 502 (8th Cir. 1997).  Once plaintiff has satisfied the objective portion of the deliberate indifference standard, then the plaintiff must also satisfy the subjective portion of the standard, showing that the defendant officials deliberately disregarded the serious medical need, in order to succeed on his claim.  To satisfy the subjective element of the deliberate indifference standard when there is an allegedly intentional delay in providing medical treatment, the plaintiff must show either "a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed" Gordon ex rel Gordon v. Frank, 454 F. 3d 858, 862 (8th Cir. 2006).

### III.    STATEMENT OF UNDISPUTED AND ASSUMED FACTS

1.    John Jordan is the Sheriff of Cape Girardeau County, Missouri. (Jordan Deposition Page 4, Line 8).

2.    James Mulcahy is the Jail Administrator for the Cape Girardeau County Jail. (Mulcahy Deposition Page 4, Line 8).

3.    The Cape Girardeau County Sheriff's Department manages the Cape Girardeau County Jail.  (Jordan Deposition Page 4, Lines 15 & 16).

4.    Sheriff Jordan is mostly involved in administration and securing contracts and things of that nature and the everyday nuts and bolts of the jail falls on the jail supervisor. (Jordan Deposition Page 7, Lines 17-19).

5.    When an inmate comes into the Cape Girardeau County Jail, during the booking process, a physical assessment is made.  (Mulcahy Deposition Page 5, Lines 11-12).

6.    Plaintiff, Gary Bice, was arrested by the Cape Girardeau City Police Department on

December 3, 2009.  (Bice Deposition Page 17, Lines 5-9)

7.      Bice was transported to the Cape Girardeau County Jail on December 4, 2009.  (Bice Deposition Page 18, Lines 17-21)

8.      About a year before his arrest, December 3, 2009, Bice had abdominal pain, but did not go see a doctor for it.  (Bice Deposition Page 15, Lines 2-10; Page 15, Lines 23-25; Page 16, Lines 1-6)

9.      Bice did mention his condition to Dr. James Palen, his family doctor sometime before December 3, 2009.  (Bice Deposition Page 13, Lines 8-12; Page 16, Lines 10-12)

10.     Dr. Palen told Bice that if the abdominal issue was fixed, let him know, but Dr. Palen never examined Bice for his abdominal problem or recommended surgery.  (Bice Deposition Page 16, Lines 19-23)

11.     Bice was in the Cape County Jail from December 4, 2009 to March 24, 2010.  (Kelly Affidavit Page 2, Paragraph 15)

12.     On December 7, 2009, Bice turned in a sick call request to Nurse Kelly complaining of a hernia/pain and was sent to the emergency room at Southeast Missouri Hospital.  (Kelly Affidavit Page 1 Summary) (Bice Deposition Page 22, Lines 1 & 2)

13.     The Cape Girardeau County Jail has hired an outside company to provide medical care and services to the Cape Girardeau County Jail, namely Advanced Correctional Healthcare (ACH).  (Mulcahy Deposition Page 7, Lines 13-15), (Jordan Deposition Page 5, Lines 9-21)

14.     Advanced Correctional has office space inside the Cape Girardeau County Jail and

Advanced Correctional staffs several nurses at the jail. (Jordan Deposition Page 5, Lines 8-23)

15.    A doctor rotates through the jail weekly or comes in more often if necessary. (Kelly Affidavit Number 6 & 7)

16.    The doctors are employees of Advanced Correctional Healthcare. (Kelly Affidavit Page 2 #8), (Mulcahy Deposition Page 7, Lines 23-25)

17.    The jail staff does not get involved in the medical treatment, but rather the medical treatment is left up to Advanced Correctional staff. (Mulcahy Deposition Page 13, Lines 20-24)

18.    The Cape Girardeau County Sheriff's Department gets involved only in transporting inmates in and out of the facility and getting them to doctor's visits. (Mulcahy Deposition Page 13, Line 25; Page 14, Lines 1-7)

19.    If an inmate wants medical attention, the inmate can submit a medical request form to the staff. (Mulcahy Deposition Page 11, Lines 2-4)

20.    If the inmate has an emergency medical issue he is usually sent to the emergency room to be checked out. (Mulcahy Deposition Page 11, Lines 5-11)

21.    The doctor will make the final request or suggestion that a patient needs to be seen in the ER. (Mulcahy Deposition Page 11, Lines 12-16)

22.    If a situation arises that requires immediate attention, the nurse could make the call to go to the ER and the jail would arrange transportation. (Mulcahy Deposition Page 11, Lines 17-23)

23.    All inmate medical records and notes are kept by Advanced Correctional Healthcare

-6-

(ACH).  (Mulcahy Deposition Page 11, Lines 25, Page 12, Lines 1-4)

24.     All medications and prescription medications are handled by ACH.  (Mulcahy Deposition Page 17, Lines 13-23)

25.     ACH arranges for any health care to be performed by an outside facility.  (Mulcahy Deposition Page 20, Lines 2-5)

26.     The nurses make the appointments for outside treatment, put the date and place on a calendar and the jail arranges for transport.  (Mulcahy Deposition Page 21, Lines 1-6)

27.     The medical progress of an inmate is ACH's responsibility. (Jordan Deposition Page 9, Lines 12-15)

28.     Sheriff Jordan never spoke with Gary Bice nor is he familiar with his care.  (Jordan Deposition Page 10, Lines 2-6)

29.     Sheriff Jordan did not make any notes or talk to Bice about his situation and never approved or disapproved of any healthcare treatment that Bice was given in the jail. (Jordan Deposition Page 16, Lines 21-25, Page 17, Lines 1-3)

30.     The Cape County Jail staff defers to the medical staff for medical decisions.  (Jordan Deposition Page 19, Lines 23-25, Page 20, Line 1)

31.     The jail or sheriff do not oversee the operations of the medical staff, as they are an entity unto themselves, are healthcare specialists dealing with inmate health, and the jail defers to them for medical situations.  (Jordan Deposition Page 20, Lines 2-9)

32.     After Plaintiff Bice was seen in the emergency room on December 7, 2009, Nurse Kelly contacted Dr. Frank McGinty's office, Cape Surgical Clinic on December 8,

-7-

2009 for an appointment.  (Kelly Affidavit - Progress Summary Note Page 1)

33.    Dr. McGinty's office manager reported that the ER records were reviewed and Bice's condition was not an emergency.  (Kelly Affidavit - Progress Summary Note Page 1)

34.    Monnie McDonald, nurse and clinic director for Cape Surgical Clinic, is the medicaid reviewer for the clinic.  (McDonald Deposition Page 4, Lines 4-6, 9-11, 15-18)

35.    A medicaid reviewer reviews referrals to the office to see which are the most urgent needed referrals and those are the ones that are accepted since the physician takes three medicaid referrals per month per physician.  (McDonald Deposition Page 4, Lines 19-24)

36.    There is only one surgery clinic in Cape Girardeau that does general surgery and that is Cape Surgical Clinic.  (McDonald Deposition Page 5, Lines 10-16)

37.    On December 8, 2009, McDonald reviewed Gary Bice's ER note from Southeast Hospital because he was a medicaid referral.  (McDonald Deposition Page 6, Lines 9-22)

38.    McDonald reviewed the Southeast Hospital ER records to see if the patient had an urgent need to be seen.  (McDonald Deposition Page 7, Lines 3-6)

39.    McDonald reviewed Defendant's Exhibit A and determined based on her training, expertise and background that Bice did not need emergency care.  (McDonald Deposition Page 6, Lines 23-25 and Page 7, Lines 1-2; Page 7, Lines 7-11)

40.    After McDonald made the determination that Bice did not need emergency care, that

information was relayed to Candice Tracy, another Cape Surgical employee, and Candice notified the jail that the doctor would not be seeing Bice.  (McDonald Deposition Page 7, Line 12)

41. Candice Tracy, a receptionist at Cape Surgical Clinic, received a call in December 2009 from someone named Kelly at the Cape County Jail indicating an inmate (Bice) needed to be seen and Tracy was also told Bice was a medicaid patient (Tracy Deposition Pge 4, Lines 4, 8, 11-21, Page 5, Lines 1-14)

42. Tracy notified the clinic's charge nurse, Monnie McDonald, and McDonald told Tracy to get the records from the hospital to review (Tracy Deposition Page 5, Lines 20-25, Page 6, Lines 1-5) and Defendants' Exhibit B (Tracy Deposition Page 6, Lines 23-25, Page 7, Lines 1-10)

43. Nurse Kelly sent over the Southeast Hospital records.  (Tracy Deposition Page 6, Lines 6-11)

44. Dr. McGinty's office, Cape Surgical Group denied Bice being seen by the group becaue of medicaid policies and procedure. (Tracy Deposition Page 7, Lines 15-21)

45. Tracy prepared a memo of her conversation on December 9, 2009.  (Defendants' Exhibit C) (Tracy Deposition Page 7, Lines 2-12)

46. Nurse Kelly received a grievance from Bice on December 16, 2009 about no treatment for his hernia and Nurse Kelly explained to Bice that the surgeon's office wouldn't treat him at this time. (Kelly Affidavit - Progress Notes Page 1)

47. Bice refused to see the jail physician. (Kelly Affidavit - Progress Note Page 1)

48. Bice was returned to the emergency room on December 22, 2009 for re-evaluation

because of complaints of pain. (Kelly Affidavit - Progress Notes Page 1)

49.    On December 22, 2009, Mr. Bice contacted Cape Surgical Clinic wanting a letter be sent to him about denial of treatment and that he was going to bring a lawsuit against Cape Surgical for not giving him an appointment, but did not now want an appointment.  (McDonald Deposition Page 7, Lines 22-25, Page 8, Lines 1-3, Defendants' Exhibit E)

50.    Bice refused to go to the Cape Surgical Clinic on January 28, 2010. (Kelly Affidavit - Medical Progress Notes Page 2)

51.    Dr. Frank McGinty is a general, board certified surgeon practicing at the Cape Surgical Clinic in Cape Girardeau, Missouri.  (McGinty Deposition Page 4, Lines 4-8, Page 5, Lines 10-11)

52.    Dr. McGinty saw Gary Bice on December 22, 2009 at St. Francis Hospital with a complaint of pain in the groin.  The diagnosis was a right inguinal hernia.  (McGinty Deposition Page 7, Lines 2-7)

53.    Dr. McGinty's examination revealed a non reducible inguinal scrotal hernia on the right side.  (McGinty Deposition Page 7, Lines 15-17)

54.    Dr. McGinty told Bice he needed the hernia repaired at some point, but he did not think it was an emergency and could be scheduled electively.  (McGinty Deposition Page 8, Lines 2-4)

55.    Ultimately on February 22, 2010 at Southeast Hospital, Mr. Bice's hernia was repaired.  (McGinty Deposition Page 9, Lines 3-15)

56.    The hernia was not strangulated.  (McGinty Deposition Page 9, Lines 20-22)

-10-

57.     Bice's recovery went fairly well, with a normal amount of swelling a mild discomfort.  (McGinty Deposition Page 10, Lines 7-11)

58.     By history, Mr. Bice had had his hernia for about three years.  (McGinty Deposition Page 7, Lines 3-4)

59.     Bice has been charged with three counts of sodomy in Cape Girardeau County, but is currently incarcerated in Stoddard County on a change of venue awaiting trial. (Bice Deposition Page 5, Lines 8-16 and Page 4, Lines 8-10)

## IV.   LEGAL ANALYSIS

Sheriff John Jordan and Captain James Mulcahy are entitled to qualified immunity because they have not been deliberately indifferent to Plaintiff's medical needs.

As is shown by the Affidavit of Elizabeth Kelly, Depositions of James Mulcahy and John Jordan, the jail contracts with Advanced Correctional Healthcare (ACH) for all the medical needs in the jail.  The medical staff does all the diagnosing and refers the inmates to ACH's doctor or arranges for out of jail testing, if necessary.  The jail officials and corrections officers do not make any medical diagnosis or have any contact with the inmates for medical purposes except for transporting the inmates to an outside doctors office or hospital.

Prison officials cannot substitute their judgment for a medical staff's diagnostic decision, Camberos v. Branstad, 73 F. 3d 174, 176 (8th Cir. 1995) as well as for prescribing prescriptions. Meloy v. Bachmeier, 302 F. 3d 845, 849 (8th Cir. 2002).  Accordingly, Sheriff John Jordan and Captain James Mulcahy cannot be liable for any of the medical professionals medical diagnosis, referral and treatment decisions during the course of treating Plaintiff Gary Bice.

-11-

Additionally, prison official's general responsibility for supervising a facility's operation is not sufficient to establish the personal involvement necessary to support liability for deliberately indifferent medical care.  <u>Keeper v. King,</u> 130 F. 3d 1309, 1313 (8th Cir. 1997) and <u>Camberos v. Branstad,</u> 73 F. 3d at 176.  Supervisory jail personnel may be liable for deliberate indifference to serious medical needs only if they are aware of or personally involved in the allegedly unconstitutional conduct.  <u>Smith v. Clark,</u> 458 F. 3d 720, 723 (8th Cir. 2006).

As has been stated in <u>Meloy v. Bachmeier,</u> 302 F. 3d at 849, a supervisor is only liable for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes a deliberate indifference toward the violation. Citing <u>Boyd v. Knox,</u> 47 F. 3d 966, 968 (8th Cir. 1995).  The supervisor must know about the conduct and facilitate it, approve it, condone it or turn a blind eye to it.  <u>Id</u>.  Based on the affidavits and deposition testimony of all the parties, neither James Mulcahy or John Jordan were present when Gary Bice sought or received any medical care while he was in the jail from Nurse Kelly or Nurse Gibbs.  Neither Mulcahy or Jordan were personally or directly involved in any medical care of the Plaintiff.

John Jordan's only involvement in the jail was to acquire medical services through Advanced Correctional Healthcare and Defendant Mulcahy was involved in transporting the Plaintiff to appointments with medical providers outside the jail.

Jordan has no recollection of any contact with the Plaintiff Gary Bice and Mulcahy had minimal contact through Nurse Kelly concerning the Plaintiff or transporting the Plaintiff to outside medical providers.  The fact that Mulcahy may have been aware that Plaintiff complained of a hernia and need for medical treatment does not raise a genuine issue of material fact about either Jordan

-12-

or Mulcahy's personal involvement in or knowledge of lack of medical care that Plaintiff received at the Cape Girardeau County Jail.

Based on the affidavits, deposition testimony of all the parties, the deposition testimony of the physician and physician's staff personnel, there is no genuine issue of material fact to impute liability to either Captain Mulcahy or Sheriff Jordan in their individual capacity on Gary Bice's constitutional claims for damages under § 42 U.S.C. §1983.

On the qualified immunity claim, Sheriff Jordan and Captain Mulcahy were not deliberately indifferent to Bice's medical needs. Deliberate indifference by a correction official to a prisoner's serious medical needs constitutes "the necessary wanton infliction of pain" prescribed by the cruel and unusual punishment clause of the Eight Amendment. <u>Estelle v. Gamble,</u> 429 U.S. 97, 105 (1976). Bice, being a pretrial detainee at the time of his alleged constitutional violation, places him outside the Eighth Amendment proscriptions against cruel and unusual punishment, which only applies to convicted prisoners. <u>Bell v. Stigers,</u> 937 F. 2d 1340, 1342 (8th Cir. 1991). The Fourteenth Amendment, however, does guarantee pretrial detainees at least as many protections as does the Eighth Amendment. <u>Id</u>, citing <u>Bell v. Wolfish,</u> 441 U.S. 520 (1979)

In order to succeed on a claim of deliberate indifference to a serious medical need under 42 U.S.C. § 1983, Bice must satisfy the objective and subjective components of an Eighth Amendment violation. <u>Wilson v. Seiter,</u> 501 U.S. 294 (1991). The first component, which is an objective test, examines whether Bice suffered a "serious" medical need. <u>Hudson v. McMillan,</u> 503 U.S. 1 (1992). The subjective test considers whether the Defendants have acted with the requisite culpable mind. <u>Id.</u>. Only when prison officials know that an inmate faces a substantial risk of serious harm and then disregards that risk by failing to take reasonable measures, can the prison officials be held liable for

-13-

deliberate indifference. <u>Farmer v. Brennan,</u> 511 U.S. 825, (1994).

      To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, the Plaintiff, Gary Bice, must prove that he suffered from one or more objectively serious medical needs, and that the prison officials actually knew of, but deliberately disregarded those needs. <u>Roberson v. Bradshaw</u>, 198 F. 3d 645, 647 (8th Cir. 1999). Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. <u>Dulaney v. Carnahan,</u> 132 F. 3d 1234, 1239 (8th Cir. 1997). If the denial of medical care is based on alleged wrongful diagnostic judgment of a physician, the Sheriff or other jail personnel, lacking professional medical expertise, are not liable on agency principals for any constitutional wrong. This is true even though the independent contractors or physicians are acting under "color of state law". <u>West v. Atkins,</u> 487 U.S. 42 (1988); <u>Crooks v. Nix,</u> 872 F.2d 800, 803-804 (8th Cir. 1989). Bice was seen three days after he was in the Cape Girardeau County Jail for his alleged hernia condition and taken to Southeast Missouri Hospital emergency room based on his complaint and Nurse Kelly's assessment of those complaints. The hospital note indicated that Bice needed a follow up with a physician the next day and Nurse Kelly did in fact contact Dr. McGinty's office for a follow up visit and Dr. McGinty's office, after examining the medical records of the ER visit, and finding that there was no emergency condition present, told Nurse Kelly that an appointment would not be made for Mr. Bice. Nurse Kelly found out shortly thereafter that the reason Dr. McGinty would not see Mr. Bice at the present time was that his condition was not an emergency and Dr. McGinty only sees so many medicaid patients on a monthly basis. There is no

-14-

evidence that either Sheriff Jordan or Captain Mulcahy was aware of any hernia condition of the Plaintiff or that it would rise to any emergency level needing immediate care.  In fact the hernia condition of Bice had been prevalent for at least three years, and as Dr. McGinty has indicated, was non-emergent and would be treated as an elective procedure.  Further, there is no evidence that Jordan or Mulcahy were aware that Dr. McGinty would not see Bice or give him an appointment. Of course Bice didn't like the treatment he was receiving and disagreed with the type of treatment or the speed with which the treatment was being received.  However, while Bice may disagree with the care that he is being provided, that does not arise to a level of deliberate indifference.  Jones v. Norris, 310 F. 3d 610, 612 (8th Cir. 2002).

As long as the deliberate indifference threshold is not crossed, inmates have no constitutional rights to receive a particular requested course of treatment and the prison doctors/nurses remain free to exercise their independent medical judgment.  Dulaney v. Carnahan, 132 F. 3d 1234, 1239 (8th Cir. 1997). Bice's disagreements with the nurses and the jail doctors concerning his care does not establish deliberate indifference and is not actionable.  Long v. Nix, 86 F. 3d 761, 765 (1986).

The undisputed facts show that Plaintiff Gary Bice received medical treatment and he received it in a rather prompt fashion.  Bice was in the Cape Girardeau County Jail on December 4, 2009 and ultimately received his surgery on February 22, 2010.  The medical procedure performed, the repair of a hernia, was not of a medical emergency and as Dr. McGinty indicated, was elective in nature.  Furthermore, Bice had had this condition for at least three years and had been dealing with it through his family physician, Dr. Palen.  Jordan and Mulcahy not being personally involved in the care and treatment of Gary Bice, nor being advised of the nature and extent of any medical condition that Gary Bice was suffering from, and the fact that Gary Bice was receiving medical care

-15-

from the outside hired healthcare company, ACH, leads to the conclusion that Sheriff Jordan and

Captain Mulcahy are entitled to a judgment as a matter of law and that Judgment should be entered

in favor of them and against the Plaintiff Gary Bice.

It is therefore respectfully submitted, that in accordance with the Motion for Summary

Judgement filed herein, the Court enter judgment in favor of Defendants Sheriff John Jordan and

Captain James Mulcahy and against Plaintiff Gary Bice for the reasons set forth herein.


Respectfully Submitted,

SPRADLING & SPRADLING
By:      /s/  **A.M. Spradling, III**
EDMO #10371    MOBAR#23702
1838 Broadway, P.O. Drawer 1119
Cape Girardeau, MO 63702-1119
(573)335-8296   Fax (573) 335-8525
E-mail:   spradlaw@swbell.net
Attorneys for Defendants Jordan and Mulcahy


**CERTIFICATE OF SERVICE**

I hereby certify that on  February 15, 2011, the foregoing  was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Matthew B. Lee, Spain, Miller & Spain, PO Box 1248, Poplar Bluff, MO  63901


I hereby certify that on ******, the foregoing was mailed by United States Postal Service to the following non-participants in Electronic Case Filing:


SPRADLING & SPRADLING

By:      /s/  **A.M. Spradling, III**


-16-